Baker, Judge, dissenting.
[28] I respectfully dissent. After weighing the seven factors listed in Mendoza-Martinez , I would hold that the Statute is unconstitutional as applied to Kirby.
[29] First, regarding whether the sanction involves an affirmative disability or restraint, here, the disability or restraint imposed by the Statute is neither minor nor indirect. The record reveals that in sentencing Kirby in 2010, the trial court explicitly gave Kirby permission to enter school property to attend and observe "activities involving his son." Appellant's App. Vol. II p. 96. Kirby was permitted to do so for five years before the Statute went into effect. Importantly, the record is devoid of any suggestion that Kirby behaved inappropriately at any time while on school property. Given these facts, I am persuaded that this factor clearly favors treating the effects of the Statute as punitive as applied to Kirby.
[30] The majority believes that this factor restrains Kirby only slightly more than it did McVey. As the majority notes, sometime after the Statute went into effect, McVey wanted to enter a school to take a CDL class that he could have taken elsewhere. But here, since before the Statute went into effect, Kirby has been entering his son's school to see his son participate in school activities. Kirby wishes to continue to do so, and he cannot do so elsewhere. As this Court stated in McVey , "[a]n offender who is prohibited from entering school property to take a class after the unlawful-entry statute became effective is very different from an offender who is prohibited from living in a house that the offender owned and lived in for twenty years before the residency-restriction statute became effective. The effects to McVey are minor in comparison." 56 N.E.3d at 681. Because Kirby was able to enter his son's school for five years before the Statute went into effect, his situation is more akin to the homeowner affected by a residency-restriction statute than to McVey's. I see the logic in the majority's reasoning that a school can limit its visitors, yet a school presumably does not limit parental attendance at a child's activities for which parents are welcomed or encouraged to attend. In other words, the effect of this Statute to Kirby is not minor.
[31] Turning to the historical punishment factor, schools-especially school sporting events-generally have been open to members of the public. It seems reasonable to assume, therefore, that the act of restricting an individual from entering school property has historically been considered a form of punishment, whether for an act committed on school grounds or in the community. This is especially true considering that until the Statute went into effect, Kirby had been permitted to enter school property to observe his son's activities, even after he pleaded guilty to and was convicted of child solicitation. As such, *585 I am persuaded that this factor also favors treating the effects of the Statute as punitive as applied to Kirby.
[32] As for the third factor addressing scienter, I concur with the majority that it favors treating the effects of the Statute as punitive as applied to Kirby.
[33] The fourth factor considers the traditional aims of punishment. In Pollard , the Indiana Supreme Court found that the residency restriction statute, which limits where sex offenders can reside, was an "even more direct deterrent to sex offenders than the [Indiana Sex Offender Registration Act]'s registration and notification regime." 908 N.E.2d at 1152. One may reasonably assume that like the residency restriction statute, the Statute is designed to reduce the likelihood of future crimes by depriving the offender of the opportunity to commit those crimes. In this sense, the Statute is a direct deterrent to sex offenders. I find our Supreme Court's conclusion regarding this factor in Pollard to be instructive and am similarly persuaded that this factor favors treating the effects of the Statute as punitive as applied to Kirby.
[34] I concur with the majority regarding the fifth and sixth factors. The fifth factor considers whether the behavior to which the Statute applies is already a crime; I concur that this factor favors treating the effects of the Statute as punitive as applied to Kirby. The sixth factor considers whether the Statute advances a legitimate, regulatory purpose; I concur that this factor favors treating the effects of the Statute as non-punitive as applied to Kirby.
[35] Finally, the seventh factor considers whether the Statute appears excessive in relation to the alternative purpose assigned. It is undisputed that the Statute applies to Kirby. It is also undisputed that there are legitimate, non-punitive purposes of the Statute-public safety and protection of children. The Statute, however, does not consider the seriousness of the crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending. See Pollard , 908 N.E.2d at 1153 (noting that the residentiary restrictions statute that applies to certain sex offenders failed to consider the seriousness of the offender's crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending). In considering whether the residency restriction statute was unconstitutional as applied to a particular offender, our Supreme Court found that by restricting offenders "without considering whether a particular offender is a danger to the general public, the statute exceeds its non-punitive purposes." Id. I believe that this logic applies equally to the Statute.
[36] At the time of Kirby's sentencing, the trial court explicitly granted Kirby permission to enter school property to observe activities involving his son. It is unreasonable to think that the trial court would have made this exception had it believed Kirby to be a danger to society in these limited circumstances. Kirby entered school property to observe his son's activities for nearly five years before the Statute went into effect; the record does not show that he behaved inappropriately during this time. Also, by the time the Statute went into effect, Kirby had completed all forms of punishment imposed by the trial court except for his continued registration on the sex offender registry.
[37] While I understand the majority's position regarding this factor, I find that to suddenly deny Kirby the opportunity to attend his son's activities-which he could do while completing his punishment through probation-only because of his prior conviction is excessive. As such, I am persuaded that this factor favors treating *586 the effects of the Statute as punitive as applied to Kirby.
[38] After considering each of the above-discussed factors, I would conclude, as did the trial court, that the Statute is unconstitutional as applied to Kirby because it amounts to retroactive punishment in violation of the ex post facto clause of the Indiana Constitution. Therefore, I would affirm.